UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

SHERRON KYE,

               Defendant.

**DECISION AND ORDER**
20-MR-88-A

The defendant, Sherron Kye, is charged in a Criminal Complaint with one count of conspiracy to distribute, and to possess with intent to distribute, 40 grams or more of fentanyl in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Dkt. No. 2-1. The case is before the Court on the United States' motion pursuant to 18 U.S.C. § 3145(a)(1) (Dkt. Nos. 1, 2, and 6) to revoke a March 10, 2020 order of Magistrate Judge Jeremiah J. McCarthy (W.D.N.Y. 20-MJ-1012, Dkt. No. 7) (transcript) authorizing pretrial release of defendant Kye on home incarceration with GPS monitoring and a $25,000 unsecured bond signed by his girlfriend.

The United States argues primarily that defendant Kye should be detained pending trial pursuant to 18 U.S.C. § 3143(e) on the ground that evidence of his possession of a substantial amount of fentanyl that he planned to distribute, even while on probation for a felony weapons offense, shows that he poses a serious danger to the community that is not alleviated by the conditions of pretrial release ordered by the Magistrate Judge. The United States also argues that the strength of the evidence against the defendant and the mandatory-minimum sentence of imprisonment that he

faces if he is convicted give the defendant a strong motive to flee.  It further argues that GPS monitoring and the signature bond executed by the proposed surety, who the United States maintains is financially insecure, will not reasonably assure his appearances in Court as required.

For his part, defendant Kye argues that he was merely near his alleged co-conspirator when they were arrested, that he is a life-long resident of Buffalo with family and other ties to the community, and that a 2018 Class D felony weapons conviction under New York law for which he is on probation was the result of a questionable investigation.  He argues that the release conditions imposed by the Magistrate Judge reasonably assure the safety of the community and his appearances as required.

Upon *de novo* review of all the circumstances, and for reasons stated below, the Court finds pursuant to 18 U.S.C. §§ 3142(e) and 3145(a) that the conditions of release imposed by the March 10, 2020 release order will not reasonably assure the safety of the community.  Accordingly, the Court revokes the March 10, 2020 release order and defendant Kye shall be detained pending trial or a change in circumstances that have a material bearing on whether he can be released pending trial.

**BACKGROUND**

As noted above, defendant Kye is charged in a Criminal Complaint returned on March 6, 2020, with conspiring to possess with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 846, as well as with possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  Dkt. No. 2-1.  Each of those two offenses carries a mandatory-minimum

2

penalty of 5 years, with a maximum term of imprisonment of 40 years. Defendant had an initial appearance and detention hearing before the Magistrate Judge on March 10, 2020. W.D.N.Y. 20-MJ-1012, Dkt. No. 7.

The United States proffered that the charges in the Criminal Complaint arose upon the execution of search warrants for (1) 81 Mills Street, lower rear apartment, Buffalo; (2) a vehicle used by the defendant's alleged co-conspirator, Torrance Bailey; and (3) Bailey's person. The warrants were executed on March 5, 2020 by the Buffalo Police Department and federal agencies. Law enforcement personnel saw Kye and Bailey exit the residence, walking between 81 Mills Street and 79 Mills Street. As law enforcement approached the defendants, Bailey threw a set of keys to the ground, and Kye threw a bag on the ground and attempted to enter a parked vehicle on Mills Street to get away. The bag Kye tried to throw away contained what law enforcement estimated was three ounces (i.e. more than 70 grams, or approximately 740 individual doses) of suspected fentanyl.

The contents of the bag defendant Kye tried to throw away were not field tested due to the danger fentanyl poses to law enforcement. And as of the date of the detention hearing, law enforcement had not yet received laboratory testing results regarding the suspected fentanyl. In reply on this appeal, however, the United States proffered a laboratory report confirming that the substance in the bag contained 99.66 grams of fentanyl and 4-ANPP (4-anilino-N-phenethylpiperidine), both Schedule II controlled substances. Dkt. No. 6-1.

Another 5 ounces of suspected fentanyl was recovered from the lower rear apartment at 81 Mills Street.  Approximately $3,600 was seized from Bailey, and according to law enforcement personnel, that amount is consistent with the purchase of approximately 3 ounces of fentanyl.  The laboratory testing indicates that the additional suspected fentanyl found in the 81 Mills Street apartment contained 120.04 grams of fentanyl and 4-ANPP.  Dkt. No. 6-1.  In the apartment, law enforcement also seized packaging materials and presses with suspected fentanyl residue on them.  The United States proffers that this evidence circumstantially demonstrates that defendant Kye purchased the fentanyl he possessed from Bailey, and that Kye possessed the fentanyl for distribution, not just personal use.[1]

Among other conditions of pretrial release, Magistrate Judge McCarthy ordered defendant Kye to submit to home incarceration subject to GPS monitoring, and ordered Felicia Davis, the mother of four of the defendant's six children, to sign a $25,000 signature bond.  Defendant's release was stayed pending disposition of this motion to revoke the release order.  *See* Dkt. No. 3; *see also* W.D.N.Y. 20-MJ-1012, Dkt. No. 7.

**DISCUSSION**

If a defendant is ordered released by a magistrate judge, the United States may, under 18 U.S.C. § 3145(a)(1), move for revocation of the release order before the district court.  Upon such a motion, the district court performs *de novo* review of the magistrate judge's release order.  *See United States v. Leon,* 766 F.2d 77, 80 (2d Cir.

---

[1] The United States noted Bailey's ties to David Washington (thereby implying that defendant Kye likewise has ties to Washington), who was recently indicted for an alleged role in a large cocaine-trafficking conspiracy.  *See* 20-CR-29-A.  The Court focuses on the events of March 5, 2020, and the allegations made against defendant Kye.

4

1985) (finding that a district court "should not simply defer to the judgment of the magistrate, but [should] reach its own independent conclusion"). When conducting *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence. *See e.g. United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).

In this case, the United States objects to defendant Kye's pretrial release on the grounds that he poses a danger to the community and is a serious risk of flight for which no adequate bail conditions are available. The United States has the burden to show by clear and convincing evidence that the danger posed by the defendant cannot be alleviated by any combination of available bail conditions. *See United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985). It also has the burden to show by a preponderance of the evidence a serious risk of flight for which no conditions will reasonably assure the defendant's appearances in court and as otherwise required. *Id.* Neither a judicial finding with respect to danger nor a finding regarding risk of flight necessarily needs to be supported by live testimony under oath, as "[i]t is well established in [the Second Circuit] that proffers are permissible both in the bail determination and bail revocation contexts." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

In determining whether there are conditions of release that will reasonably assure the safety of the community and a defendant's appearances as required, the Court must consider the factors in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves a controlled substance;

5

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g) (ellipsis supplied).

For serious narcotics offenses, crimes like the Title 21 offenses punishable by ten years or more imprisonment charged in the Criminal Complaint against defendant Kye, a finding of probable cause to believe that such an offense was committed, and that the defendant committed it, gives rise to a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

When the § 3142(e) rebuttable presumptions apply, the United States retains the burden of persuasion if it is seeking detention, and "a defendant must introduce some evidence contrary to the presumed fact[s] to rebut the presumption." *United States v. Rodriguez*, 950 F. 2d 85, 88 (quotation omitted) (2d Cir. 1991). "Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding

6

whether to release a defendant." *Id.* (quotation omitted). The § 3142(e) presumptions, if unrebutted, are alone sufficient to sustain the United States' burdens of proof on danger and serious risk of flight. *See id.; see also United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014).

Nature and Circumstances of the Offense

As set forth above, defendant Kye is charged with conspiracy to distribute, and to possess with intent to distribute, 40 grams or more of fentanyl, and with possession with intent to distribute 40 grams or more of fentanyl. The charges arise from the allegations of the defendant's role in purportedly purchasing 3 ounces of fentanyl from co-defendant Bailey for distribution. If convicted of the possession with intent to distribute offense, or of conspiracy to do the same, defendant Kye will be sentenced to a mandatory minimum of 5 years, with a maximum term of imprisonment of 40 years.

The quantity of the controlled substance that was recovered from defendant Kye in this case was relatively substantial, and fentanyl is particularly dangerous. According to the United States, the potency of fentanyl makes it extremely dangerous, as it can be deadly even to touch, and its use results in frequent overdoses resulting in respiratory depression and death. Nearly 100 grams were found in the bag defendant Kye allegedly disposed of, which the United States points out is enough for more than 740 doses (the typical dose estimated at a tenth of a gram).

Defendant Kye does not dispute this point; rather, he argues in opposition to the United States' appeal that there was no proof that the controlled substance allegedly possessed by him was fentanyl. In reply, however, the United States has proffered a

7

laboratory report confirming that the substance in the bag he allegedly tried to throw away contained 99.66 grams of fentanyl and 4-ANPP, both Schedule II controlled substances. The nature and circumstances of the offense weigh in favor of detention.

Weight of the Evidence

The weight of the evidence supporting the conspiracy and possession charges in the Criminal Complaint against defendant Kye seems relatively strong, and it is certainly enough to establish probable cause triggering the § 3142(e) rebuttable presumptions. The United States proffered that the defendant was seen by law enforcement on March 5, 2020, exiting a residence with co-defendant Bailey, and that the defendant threw away a bag of almost 100 grams of fentanyl, an amount sufficient for more than 740 individual doses, while attempting to flee, *see* Dkt. No. 6-1.

Defendant Kye argues that he was not the target of the search warrants; rather, his co-defendant Bailey was, and the items and substances found in the 81 Mills Street apartment should not be considered against him. He further argues that he was merely near Bailey. But defendant Kye was seen throwing the bag of almost 100 grams of fentanyl to the ground and attempting to flee. The uncomplicated evidence proffered by the United States tends to show that the defendant possessed the fentanyl with intent to distribute it and that he tried to get rid of it while trying to avoid arrest.

Defendant Kye remains an innocent man. *See* 18 U.S.C. § 3142(j). Assessing the strength of the evidence against the defendant is not to assess his guilt or innocence; rather, it is an essential part of assessing the defendant's risk of danger and his motive to flee to avoid conviction and punishment. It is well settled that when

8

evidence of a defendant's guilt is solid, and when the sentence of imprisonment upon conviction is likely to be long, as is true in this case, a defendant has stronger motives to flee. *See United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007). Although defendant Kye has not yet been indicted for possession with intent to distribute 40 grams or more of fentanyl, or a conspiracy to do same, the Court finds, based on the laboratory test results and other information proffered by the United States, that the defendant has a strong incentive to flee.

History and Characteristics of the Defendant

Although defendant Kye's history and characteristics weigh both in favor, and against, pre-trial detention, the Court notes that most significant is Kye's prior criminal record. He pled guilty in 2018 to attempted criminal possession of a weapon in the second degree, a Class D felony offense under New York law. He was sentenced to 5 years of probation and was on probation when he allegedly threw away the bag of fentanyl when seen by law enforcement. Defendant's alleged conduct just over a year after his weapons conviction and while on probation supervision weighs in favor of detention.

Defendant Kye argues at the time of the prior weapons offense he had been operating a borrowed vehicle that contained a hidden, loaded firearm that he was unaware of. He also argues that a reduced plea in that case reflected a questionable search that led to seizure of the gun. These assertions do not change the fact that defendant was arrested for serious narcotics offenses while on probation for another criminal conviction.

9

Defendant Kye has other criminal history as well, albeit from many years ago and of a less serious nature. In 2010 he pled guilty to disorderly conduct on a weapons possession charge and was sentenced to a conditional discharge. He has a misdemeanor drug conviction from 2014, for which he received a conditional discharge as well.

The Court has considered other aspects of defendant Kye's background. He has strong ties to family members in this community and to the community. As defendant has emphasized, he is a life-long resident of Buffalo and a high school graduate. Defendant Kye has lived for the past three years with his girlfriend of eleven years, Felicia Davis, and four of his children. He has two other children from two prior relationships. Defendant Kye has no international travel documents and self-reported that the last time he entered Canada was in 2005. He is in good physical health with no mental health concerns. He reported no substance abuse other than use of marijuana, which he last used years prior to his arrest for the current charges.

While defendant reported a monthly income of $1,200, he lacks verifiable, steady employment. He indicates he has been self-employed in the music and entertainment industry, owning and operating FabPro Entertainment since 2003. He worked for about six months in 2016 for Certainty Packaging and may have also done some off-the-books work for his half-brother who owns a construction company.

Danger to the Community

There is substantial evidence that defendant Kye possessed, and intended to distribute, more than 740 doses of dangerously potent and destructive fentanyl. The danger that the defendant poses is the exactly the sort of danger to the community that prompted Congress to enact the presumption that persons charged with serious drug offenses pose a danger while on pretrial supervision. *See Leon*, 766 F.2d at 81 (danger to the community includes "the harm to society caused by [the significant risk of continued] narcotics trafficking"); *see United States v. Simms*, 2019 U.S. Dist. LEXIS 219677, *19 (N.D. Oh. Dec. 23, 2019) ("The distribution of fentanyl, one of the most deadly illegal drugs on the black market, poses an incredible threat to community members."); *United States v. Brown*, 2017 U.S. Dist. LEXIS 179110, *7-8 (W.D. Pa. Oct. 30, 2017) ("The court is mindful that the distribution of fentanyl, in particular, has recently resulted in serious harm to the community…"); *United States v. Morrison*, 2016 U.S. Dist. LEXIS 178205, *9, 11 (W.D.N.Y. Dec. 23, 2016).

Magistrate Judge McCarthy released defendant Kye to home incarceration subject to GPS monitoring on the condition that his girlfriend Felicia Davis sign a $25,000 unsecured bond. Ms. Davis indicated that she makes $14 per hour as a teacher, that she supports her four children on that income, and that she understood she would be at risk of being indebted for the $25,000 amount of the bond if the defendant were to violate a condition of his release.

It does not appear that Ms. Davis could realistically be expected to satisfy the $25,000 liability on account of the unsecured bond if the defendant violates a release condition, however. She does not have the wherewithal. And because the defendant is

11

in arrears on child support payments of approximately $20,000, the Court is unable to conclude that any concern he may have for Ms. Davis and his children, and their financial circumstances, would preclude him from distributing drugs while on release.[2]

In addition, as mentioned above, defendant Kye's arrest for alleged criminal conduct just over a year after his 2018 conviction, and while on probation supervision, suggests that he may not abide by the conditions of release imposed by this Court. GPS monitoring while on home incarceration does prevent someone from making money distributing illegal controlled substances while on pretrial release.

The COVID-19 Pandemic

Lastly, defendant Kye argues that he should be released because the COVID-19 pandemic poses a risk of exposure to him in jail, and preparation for trial has been hindered as in-person attorney visits are generally no longer permitted. While it is unclear what provision of the statute defendant relies upon, two possibly apply here. *See* 18 U.S.C. §§ 3142(f), (i).

While the Court is cognizant of the unprecedented risks posed to individuals and the public by the rapidly-unfolding pandemic, defendant Kye acknowledges that his "health does not render him especially vulnerable", and defense counsel implicitly acknowledges that he is able to communicate with defendant Kye by telephone. Even if defendant was released on conditions allowing home confinement, the Court finds it unlikely that defense counsel would safely be able to "show him the proof in person."

---

[2] Defendant Kye proffers that since the detention hearing two additional family members, the defendant's aunt and half-bother, have offered to sign unsecured bonds to obtain his release. While it might be that some form of economic security could adequately secure the defendants appearances as required, the Court finds the bonds would not mitigate the danger to the community.

Moreover, the proof in this case remains relatively strong, even more so by virtue of the proffer of the laboratory report showing that the substance found in the bag allegedly tossed to the ground by defendant was fentanyl. *Compare United States v. Stephens*, 2020 U.S. Dist. LEXIS 47846, *2-3 (S.D.N.Y. Mar. 18, 2020).

The Court has considered each of the § 3142(g) factors in this case. After carefully analyzing all the circumstances, the Court finds that defendant Kye has failed to overcome the presumption that he is a danger to the community. Specifically, GPS monitoring while on home detention or home incarceration, even with unsecured bonds, will not eliminate the specific danger that the defendant poses to the community. *See United States v. Ferranti*, 66 F.3d 540, 543 (2d Cir. 1995) (the bond "would have deterred flight, not danger"), citing *Rodriguez*, 950 F.2d at 89. The Court finds by a standard of clear and convincing evidence that the monitoring, financial, and the other conditions imposed upon defendant Kye's pretrial release by the Magistrate Judge are inadequate to alleviate the danger to the community posed by the defendant.

**CONCLUSION**

For the reasons stated above, the motion of the United States pursuant to 18 U.S.C. § 3145(a)(1) to revoke Magistrate Judge McCarthy's oral release order of March 10, 2020, Dkt. No. 1, is granted, and the defendant, Sherron Kye, is ordered detained pending trial.

The Court further orders that defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent

practical, from persons awaiting or serving sentences or being held in custody pending appeal.

The Court further orders that defendant be afforded reasonable opportunity for private consultation with counsel.

Finally, the Court directs that on order of a Court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which defendant is confined shall deliver defendant to a United States Marshal for the purpose of his appearance in connection with any court proceeding.

**SO ORDERED.**

_s/Richard J. Arcara_  
HONORABLE RICHARD J. ARCARA  
UNITED STATES DISTRICT COURT

Dated: April 10, 2020